W. A. HOLLAND AND WIFE, ETC., *v.* THOS. F. CRUTCHFIELD, STONE & CO.

**Infants—Sale of Land Before Majority—Bond for Title After Arriving at Age—Surety on Bond Estopped to Claim Land.**

Where an infant sells his land and executes a bond with security that he will make a perfect title when he arrives at twenty-one years of age, the surety in the bond is estopped to assert title to the land against the infant's vendor.

APPEAL FROM LOUISVILLE CHANCERY COURT.

May 1, 1872.

OPINION BY JUDGE PETERS:

On the original hearing the attention of the court was not particularly called to the case of Holland and wife against Stone, and it was not observed that the pleadings were different materially in that case from the others.

In the answer of Holland and wife which they make a cross-petition against E. M. Stone, and to which he made no reply,

or, if he did, it has escaped the attention of the court, although a summons was served on him. They charge that the lot for which they are sued was conveyed by E. L. Lampton to Francis M. Minter, when he was an infant, that before he, Minter, was twenty-one years of age he sold the lot to D. B. Vannice, upon condition that he would execute a bond to Vannice with said ·E. M. Stone as his surety; that Minter would convey said lot of ground to him after he arrived at twenty-one years by deed vesting a good and valid title to said lot of ground in said Vannice; that a bond to that effect was executed and delivered by said Minter, with said Stone as his surety to said Vannice, and he became the purchaser of said lot for a valuable consideration. That after Minter arrived at twenty-one years of age he did convey said lot to Vannice. But the latter retained the bond executed by Minter and Stone to him, which was in his possession at Vannice's death, but since that event it has been lost or mislaid and they are unable to file it. And they repeat in their cross-petition against Stone that he covenated in his said bond that said Minter should convey said lot to their vender, Vannice, and invest him with a clear and perfect title to the same.

They refer to and make the deed from Minter to Vannice, and from the heirs of the latter to them as parts of their cross-petition and allege that Stone, by his bond, is estopped to assert title to the lot against them.

The assertion of right to the lot by appellee, Stone, is directly opposed to and in conflict with his covenant or undertaking in the bond as set out in the cross-petition and, if executed by him, and it was not procured by the fraud or artifice of Vannice to whom it was executed, he is by his own writing precluded from asserting claim to this lot.

The execution of the bond by him is not denied, nor is fraud, or artifice charged. It therefore presents a barrier in his way which he can neither overcome, nor shun.

The judgment in favor of appellee, Stone, is, in its character, several against appellants, Holland and wife, etc., for "*Lot No. 41*," and they have prosecuted a separate appeal from that judgment—indeed, all the appeals in the case were prosecuted separately, to which no objection is, nor could be properly made, and

if erroneous and prejudicial to them they have a right to have it reversed by this court, and as it is for the reasons herein stated clearly erroneous, said judgment is reversed and the cause is remanded with directions to the court below to dismiss the petition against appellants and for a judgment for costs. This reversal will not affect the other judgments against other parties.

*Harrison, for appellants.*

*Caldwell, Pirtle & Caruth, for appellees.*

---

W. H. SMITH *v.* W. J. WATKINS & STOKES.

**Partnership—Evidence.**

The fact that Stokes was the half owner of the house in which the business was conducted and was in the habit of aiding the firm to raise money for the purpose of purchasing the tobacco, tends to prove he was a partner in the business.

APPEAL FROM WARREN CIRCUIT COURT.

OPINION BY JUDGE PRYOR:

After a careful examination of the testimony presented in this record we are well satisfied that the appellant, Stokes, was a partner with Watkins & Smith in the tobacco venture for the year 1864. The relation as partners had existed between these parties during the years 1861, 1862 and 1863. No dissolution of this relation ever took place so far as the proof shows, and for the year 1864 the business progressed as it had done previously, and the appellee Watkins notified, upon some objections being made to Stokes by him, that Stokes would be kept in the firm as a partner. Stokes was the half owner of the building in which this business was conducted and during the year 1864 was in the habit of aiding the firm to raise money for the purpose of making their purchases of tobacco. It is true that the relation between Stokes and Watkins were not very amicable, but this instead of being an argument against his claim as a partner, tends, as we think, simply to show that he must have had some interest in the enterprise. The mutual dislike between the two parties would have induced Stokes to withdraw all

pecuniary assistance by him to the firm and likely ended in his refusal to permit Watkins to use his interest in the building for the purpose of the partnership and the only way to reconcile the conduct of Stokes to the fact proven is, that he was induced to permit the property to be used of which he was a part owner and to raise money for the business for the reason that he was directly interested in the profits resulting from it. Smith was a competent witness as between Watkins and Stokes. Smith only claimed one-third of the profits of the concern. Watkins claimed one-half, or, in other words, that Smith and himself alone constituted the firm.

He was compelled to pay over, according to his own statements, two-thirds of the profits when, if the position assumed by Watkins is sustained, he would have to account for only one-half. He is testifying directly against his interest and upon the cross-petition of Stokes as well as in the original controversy he was a competent witness to establish other interest in the partnership than his own and Watkins, when that statement, if true, lessened the amount to which he might otherwise be entitled to. Smith's statement leaves no doubt upon the question of partnership and in this he is sustained by the declarations of Watkins made to others who testify in the case, and he is also strongly corroborated by the facts that in all the policies of insurance obtained upon this tobacco during the year 1864, and before this difficulty had its inception, the names of Smith, Stokes and Watkins were used as the owners of the tobacco. The proof shows conclusively that Stokes was a partner. The commissioner very properly excluded the claim of the appellant Smith for interest. The interest account, if the parties are to be charged with interest, would result against the appellant, and at any rate the extra services rendered by Watkins more than repaid the firm for any interest with which he is chargeable. There was no intention on the part of either of the partners to charge interest or pay for services. The commissioner's report, we think, settles this case upon an equitable basis and should have been confirmed. In adopting the commissioner's report as the judgment in this case the court below should require first the costs in that court to be paid out of the partnership fund, as one party is as much in default as the other. The judgment of

the court below is reversed on the original and affirmed on the cross appeal, and for further proceedings consistent with this opinion.

*Rodes, Rhea, for appellant.*

*Clarke, Dulaney, for appellee.*